IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TERESA McMEANS,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )        CIVIL ACTION NO. 2:13-cv-820-TFM
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security, )
                                   )
          Defendant.               )

## MEMORANDUM OPINION

### I.  PROCEDURAL HISTORY

Teresa McMeans ("Plaintiff" or "McMeans") applied for disability insurance benefits
under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and
supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*
Her application was denied at the initial administrative level.  Plaintiff then requested and
received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the
ALJ issued a decision in which the ALJ found Plaintiff not disabled from the alleged onset
date of December 23, 2010, through the date of the decision.  Plaintiff appealed to the
Appeals Council, which rejected her request for review of the ALJ's decision.  The ALJ's
decision consequently became the final decision of the Commissioner of Social Security
("Commissioner").[1]  *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). Judicial

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## II. NATURE OF THE CASE

McMeans seeks judicial review of the Commissioner's decision denying her application for supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## III. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact,

and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1)   Is the person presently unemployed?
>
> (2)   Is the person's impairment(s) severe?
>
> (3)   Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
>
> (4)   Is the person unable to perform his or her former occupation?
>
> (5)   Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## V.  THE ISSUES

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

## A.    Introduction

Plaintiff was thirty-three years old at the time of the hearing before the ALJ, and she had a high school education.  Tr. 37.  Her past relevant work experience was as a shuttle driver, quality control, cashier, and fry cook.  Tr. 48-49.  Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff "has not engaged in substantial gainful activity since December 23, 2010, the alleged onset date." Tr. 13.  At Step 2, the ALJ found that Plaintiff suffers from severe impairments of "Degenerative Joint Disease of the Right Knee, Obesity; Depression, and Mood Disorder Psychosis, not otherwise specified"  *Id.*  The ALJ then found at Step 3 that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  *Id.*  Next, the ALJ found that Plaintiff has the RFC to perform "less than a full range of light work," and identified her additional nonexertional limitations. Tr. 15-16.

Following the RFC determination and taking into consideration the vocational expert's testimony, the ALJ found at Step 4 that Plaintiff was "capable of performing past relevant work as a Shuttle Driver."  Tr. 28.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 23, 2010, through the date of th[e] decision." Tr. 29.

## B.    Plaintiff's Claims

Plaintiff made only general statements in her initial, pro se brief.  She said she has

been sick dating back to December 2010, and she has not "worked since then with mental health issues and [arthritis] in both of [her] legs." Pl's Br. (Doc. 12) at 2.  The Commissioner interpreted Plaintiff's initial brief as raising the following claims:  "(1) whether the ALJ reasonably accommodated all of Plaintiff's limitations in his residual functional capacity finding; and (2) whether the ALJ reasonably assessed Plaintiff's credibility."  Def.'s Br. (Doc. 13) at 1-2.  Counsel subsequently entered an appearance for Plaintiff and filed a reply to the Commissioner's brief, raising only one issue in response: Whether "[t]he ALJ erred by rejecting the medical opinions expressed by Ms. McMeans's treating psychiatrist."  Pl.'s Reply Br. (Doc. 18) at 1.  The court will address each of the arguments.

## VI.  DISCUSSION

### A.  Whether the ALJ Properly Rejected the Treating Psychiatrist's Opinion

Plaintiff argues the ALJ improperly rejected the opinion of her treating psychiatrist, Dr. Shah, and her mental health disability is supported by the treating records from Montgomery Area Mental Health Authority as well as the medical opinion of Dr. Shah.  Pl.'s Reply Br. (Doc. 8) at 1.  Plaintiff further argues the ALJ failed to investigate when Plaintiff last saw Dr. Shah and failed to ensure the record included all of Dr. Shah's records.  *Id.* at 5.  Plaintiff's focus is on her alleged paranoia and hallucination, therefore that will be the focus of this court's review, as well.  *Id.* (placing in bold text the references to paranoia, hallucinations, hearing voices, and schizophrenia).

On September 14, 2012, Dr. Shah prepared a mental medical source statement, in

which he indicated Plaintiff had seven areas of marked limitation, including ability to interact appropriately with the general public; ability to understand, remember, and carry out simple instructions; ability to understand, remember, and carry out repetitive instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain a routine without special supervision; and ability to respond appropriately to supervision.  Tr. 293-95.  He also indicated Plaintiff had six areas of extreme limitation, including ability to get along with coworkers or peers; restriction in daily activities; ability to understand, remember, and carry out complex instructions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to respond appropriately to changes in work setting; and ability to respond to customary work pressures.  *Id.*

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2))[6]. The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62; *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 58485 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports

---

[6] Effective March 26, 2012, §404.1527 was amended, and paragraph (c) was removed, and paragraph (d) was redesignated as (c). Thus, the factors to be considered by an ALJ in deciding the weight to give a medical opinion that previously were listed in § 404.1527(d), are now listed in § 404.1527(c). *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651-01, at *10,656 (Feb. 23, 2012) (effective Mar. 26, 2012).

a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581. "The opinion of a reviewing, non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted).

After reviewing all the medical records, the ALJ gave "little evidentiary weight" to the opinion of Dr. Shah based on the "brief treating relationship" Dr. Shah had with Plaintiff, because "Dr. Shah's assessment was provided over one year after [Plaintiff's] last documented visit to Dr. Shah . . . . and Dr. Shah did not provide an explanation of the basis of his evaluation." Tr. 22.   The ALJ stated:

> Dr. Shah's opinion is unsupported by objective medical evidence and is merely conclusory. (Exhibit 10F)  [Tr. 293-95.] Dr. Shah did not provide any explanation for the basis of his opinion.  Additionally, Dr. Shah's treatment notes (Exhibits 2F, 3F, & 4F) [Tr. 232-59] do not support a finding of disability, via mental health issues.  The record documents that the claimant and Dr. Shah had a brief treating relationship. (Exhibits 2F, 3F, & 4F)  The claimant's last visit to Montgomery Area Mental Health was in July 2011. (Exhibit 4F)  Therefore, there is no documentation of an ongoing treating relationship with the claimant.  Dr. Shah's opinion was rendered a year after the claimant's last documented visit.  Accordingly, I give Dr. Shah's opinion little weight.

Tr. 28.  The ALJ further found "that the limitations specified on Medical Source Statement that Dr. Shah completed are disproportionately severe, given the claimant's objectively determined mental impairments." *Id.*  The ALJ determined Dr. Shah's opinion that Plaintiff

had "extreme restriction in activities of daily living, a marked limitation in the ability to interact with the public, and an extreme limitation in the ability to get along with co-workers . . . is not supported by the credible evidence of record and is not consistent with his treatment records." Tr. 22.  The ALJ likewise determined Dr. Shah's opinion that Plaintiff "had marked to extreme functional limitations that prevent her from completing an eight-hour workday . . . is not supported by the credible evidence of record and is not consistent with the treatment records. *Id.*

The ALJ's determination is supported by substantial evidence.  First, Dr. Shah's opinion was conclusory.  Dr. Shah's responses in the medical source statement consist entirely of circled sections from among preprinted answers.  Although the questionnaire is designed to solicit information in addition to a narrative report[7] from the physician, the record contains no such narrative report. Tr. 293-95  Dr. Shah left blank the only space on the form for "comments" from the physician.  Tr. 295.

In addition, Dr. Shah's own treatment records do not support his opinion. Plaintiff presented to Montgomery Area Mental Health Authority for intake on March 31, 2011.  Tr. 233-40, 245-52.  As part of her intake, McMeans reported paranoia and hallucinations that began two years earlier, but she reported she did not receive hospitalization or treatment for them.  Tr.  239.  She reported that a week earlier, her primary care physician prescribed Citalopram for depression, and she stated it had helped.  Tr. 233, 239.  McMeans stated she

---

[7] The questionnaire instructions provide, "In addition to the information provided in your narrative report, please complete items 1 through 20 below by circling the appropriate word." Tr. 293.

was hearing voices, seeing eyes and shadows of people following her, and she felt paranoia, that people were talking about her, she had depressed mood, decreased concentration, decreased ability to think, sweating, trembling/shaking, nausea, dizziness, "nerves," and fears/phobias of big crowds.  Tr. 237.  She reported she felt depressed because she could not stop the hallucinations and paranoia.  Tr. 237.  McMeans stated she did not get along with her sister because she believes her sister talks about her all the time.  Tr. 237.  The intake form indicates McMeans wanted "to see Dr. Shah and a therapist to deal w[ith] paranoia, hallucinations, anxiety, depression, and other psychosocial issues."  Tr. 239.  She was diagnosed with mood disorder not otherwise specified ("NOS"), with stressors of her children's medical conditions and finances.  A diagnosis of psychotic disorder NOS was also initially given, and despite Plaintiff's claimed paranoia and hallucinations, it was crossed out. Tr. 233.

On May 9, 2011, McMeans saw Dr. Shah[8] for fifty minutes.  Dr. Shah described her mental status as paranoia with visual and auditory hallucinations, along with family stressors, and no friend.  He noted McMeans had not worked since December 2010, had no income, and her parents were financially supportive.  He prescribed her Lexapro and Latuda[9] and asked that she return in a month.  Tr. 243  On that date Dr. Shah also approved a Global

---

[8] Dr. Shah's progress notes, which are only handwritten and not typed, are largely illegible.  Tr. 241, 243, 253, 255, 259.

[9] Lexapro is indicated for the treatment of depression and anxiety.  Latuda is indicated for the treatment of mood disorders such as schizophrenia and depression associated with bipolar disorder.  *See* WebMD, http://www.webmd.com/drugs (last visited November 2, 2014).

Assessment of Functioning ("GAF") score of 50, but he made no comment about it in his notes.  Tr. 233, 243.

On June 7, 2011, McMeans returned to Montgomery Area Mental Health and saw Dr. Shah for fifty minutes.  She reported feeling about the same.  Tr. 241.  Her appearance and affect were appropriate, her mood was dysphoric, she reported hallucinations and poor sleep but had a good appetite, normal orientation, and calm motor activity.  Dr. Shah increased McMeans' Latuda medication, continued the Lexapro, and asked her to return in one month. *Id.*

On July 1, 2011, McMeans saw Dr. Shah again.  Tr. 259.  Her appearance and affect were good, her appetite was fair, her orientation was normal, and her motor activity was calm.  *Id.*  McMeans reported mood swings, poor sleep, insomnia, nightmares, hearing voices, and seeing people she did not know who told her to kill herself.  *Id.*  Her mood was documented as anxious, dysphoric, and irritable most of the time.  *Id.*  Dr. Shah commented, among other things, that McMeans was "still depressed," "not able to work," and tolerating the medication well.  Dr. Shah told McMeans to return in two months.  *Id.*  Under the section labeled "DIAGNOSIS:" he did not check either "No changes" or the "Change as follows," but he wrote an illegible word followed by "no child support - not working at present."  *Id.* The section labeled "PLANS:" is blank and does not indicate whether to continue with the same medications or change them.  Under "Other:" appears to be written "counseling [with] Ms. Rivers."  *Id.*  No further medical records from Dr. Shah were provided.

The ALJ gave less weight to Dr. Shah's opinion because, in part, Plaintiff saw Dr. Shah only three times, and the last time was over a year before Dr. Shah gave his conclusory medical source statement.  Tr.  22.  Plaintiff argues the ALJ should have investigated when Dr. Shah last saw Plaintiff and ensured the record included all of Dr. Shah's records.  Pl.'s Reply Br. (Doc. 18) at 5.[10]  "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (explaining that a hearing before an ALJ is not an adversarial proceeding).  But an ALJ's failure to recontact[11] a treating source does not warrant remand unless "'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'  The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'"  *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (alteration in original) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  Here,

---

[10] Plaintiff's stated in her request for appellate review that "mental health didn't send in all of my medical paperwork about my condition for the year 2011." Tr. 7.  Plaintiff submitted additional evidence to the Appeals Council, but the evidence was not from Montgomery Area Mental Heath.  Tr. 2, 5, 343-96.

[11] Pursuant to new regulations, which were in effect at the time of Plaintiff's hearing and the ALJ's decision, the ALJ now has discretion to decide whether to recontact a treating source as the first step in resolving an inconsistency or insufficiency in the evidence.  *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651-01 at 10,652 (eliminating 20 C.F.R. § 416.912(e) and adding 20 C.F.R. § 416.920b; eliminating 20 C.F.R. § 404.1512(e) and adding 20 C.F.R. § 404.1520b)). Under the revision, the ALJ must take at least one of the following steps: (1) recontact the treating physician or other medical source, (2) request additional existing records, (3) request a consultative examination, or (4) ask the claimant or others for more information. 20 C.F.R. § 404.1520b(c)(1)-(4). The new regulations "do not alter an adjudicator's obligations," and the agency "expect[s] that adjudicators will often contact a person's medical source(s) first." How We Collect and Consider Evidence of Disability, 77 Fed. Reg. at 10,652.

the record did not include evidentiary gaps resulting in ambiguity or unfairness. Instead, the sufficiently developed record did not support McMeans' allegations of disability or Dr. Shah's opinions regarding the severity of her limitations. Thus, the ALJ was not required to recontact Dr. Shah or clarify an ambiguity in the record. *See Osborn v. Barnhart*, 194 F. App'x 654, 668-69 (11th Cir. 2006) (court appropriately found ALJ did not have to recontact treating physician because there was no need for additional information or clarification–substantial evidence supported the ALJ's determination that the claimant was disabled); *see also Wind v. Barnhart*, 133 F. App'x 684, 693 (11th Cir. 2005) (ALJ "not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary").

McMeans argues the ALJ should have accepted Dr. Shah's opinion regarding her mental health impairments and faults the ALJ for not addressing Plaintiff's GAF score of 50, which Dr. Shah approved. Pl.'s Reply Br. (Doc. 18) at 8; Tr. 245. A GAF of 50 indicates serious symptoms or serious impairments in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed. The Eleventh Circuit has noted, however, that, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind*, 133 F. App'x at 692 n.5 (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 2000 WL 1173632 (Aug. 21, 2000)). In

fact, the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders, issued in May 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability. *See* Diagnostic and Statistical Manual of Mental Disorders V ("DSM–V") 16 (5th ed. 2013)).  Dr. Shah also made no reference to the GAF score in his opinion.  Thus, the ALJ's failure to address Plaintiff's GAF score in assessing Dr. Shah's opinion on the severity of her limitations was not error.      The ALJ's decision not to give much weight to Dr. Shah's opinion is also supported by other medical evidence in the record.  Plaintiff did not bring up hallucinations to any other provider, despite Plaintiff's prescription from her primary care physician for an antidepressant two weeks before she went to Montgomery Area Mental Health.  As the ALJ pointed out, Plaintiff's "failure to report any psychotic symptoms to her primary care physician supports a finding that [her] alleged psychotic symptoms have not been as serious as has been alleged in connection with the application and appeal."  Tr. 22.

This court therefore concludes that the ALJ had good cause not to rely on Dr. Shah's conclusory opinion.  Dr. Shah's own treatment records do not support the severity of limitation that Dr. Shah indicated in his medical source statement. *See Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (ALJ articulated good cause for rejecting treating source opinions, especially considering inconsistencies between the treating notes and the disability evaluations).  The records document Plaintiff's mood and subjective statements regarding hallucinations and paranoia, but the remainder of the mental assessments, diagnoses, and

medical plans do not support the severity of the limitations in Dr. Shah's opinion.  The other medical evidence of record also does not reflect any complaints or treatment regarding hallucinations.  Thus, the ALJ's rejection of Dr. Shah's opinion that Plaintiff had extreme and marked limitations greater than those the ALJ determined in the RFC is supported by substantial evidence.

### B.  Whether the ALJ Reasonably Assessed Plaintiff's Credibility

The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability; rather, the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.929, 404.1529. Interpreting these regulations, the Court of Appeals for the Eleventh Circuit has articulated a standard that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain or subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater*, 67 F.3d1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  An ALJ may reject the complaints as not credible, but the ALJ must explicitly and adequately articulate reasons for discrediting subjective testimony.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam).  When evaluating a claimant's subjective symptoms, the ALJ considers

such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms, among other factors. *See* 20 C.F.R. §§ 404.929(c)(3), 404.1529(c)(3).

The ALJ assessed McMeans' demeanor and credibility, and the ALJ found she "imparted the impression that she was exaggerating her limitations. The limitations to which she testified are far in excess of those which reasonably would be expected from the objective clinical findings and are not consistent with all of the other credible evidence of record." Tr. 25. The ALJ stated "limited daily activities cannot be objectively verified with any reasonable degree of certainty," and "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." Tr. 26.

Based on this record, substantial evidence supports the ALJ's determination that Plaintiff's testimony regarding the severity and limiting effect of her subjective symptoms, including her hallucinations, was not credible. During the administrative hearing on December 12, 2012, counsel for Plaintiff stated Plaintiff had problems with depression and anxiety. Tr. 37. Plaintiff testified the biggest problem that kept her from returning to work was, "I hear voices and see shadows and sometimes think about killing myself." Tr. 44. In finding her not credible, the ALJ relied on the inconsistencies between Plaintiff's daily

activities and her claimed disabilities.  The ALJ pointed out Plaintiff had full custody of her three minor children at home, one with diabetes and another with asthma.  There was no testimony or documentation of concerns regarding her ability to care for her children or involvement by the Department of Human Resources regarding her custody.  Tr. 26. The ALJ stated, "[i]f the claimant's psychotic symptoms were as severe as she alleged, it is unlikely that she would have the capacity to care for her three children, two of which have chronic health conditions." Tr. 26. The ALJ also relied on Plaintiff's inconsistent statements in her testimony, when she said she was a shuttle driver for just three months, even though she previously reported she was a shuttle driver for three years.  Tr. 26, 48, 148.  Plaintiff also testified she did not file for unemployment benefits after she lost her last job, but other records document that she did apply for them.  Tr. 27, 40, 130-31.  In her intake assessment at Montgomery Area Mental Health, she said she had no friends but also had four or more social activities a month with friends, and at the hearing she testified people visit her at her home.  Tr. 22, 44, 238.  She testified she had trouble with her appetite, but medical records showed fair to good appetite, and she steadily gained weight over the relevant period.  Tr. 23, 212, 218, 304.  In addition, as previously discussed, the objective medical evidence did not support the degree of limitation that Plaintiff subjectively claimed.  *See Hernandez*, 523 F. App'x at 657 ("the objective medical records and [plaintiff's] self-reports to her doctors did not support the alleged severity of her symptoms, and that the records were inconsistent with the degree of impairment alleged by [plaintiff]").

Relying on the treatment records, objective evidence, and Plaintiff's own testimony, the ALJ concluded that Plaintiff's allegations regarding the extent of her pain were not credible and discounted her testimony. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting Plaintiff's testimony were both clearly articulated and supported by substantial evidence. To the extent Plaintiff argues that the ALJ should have accepted her testimony regarding her pain, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). Thus, ALJ's finding that Plaintiff's testimony regarding her daily activities conflicted with her allegations regarding the extent of her subjective symptoms is supported by substantial evidence.

### C. Whether the ALJ Reasonably Determined Plaintiff's Limitations in the RFC

A residual functional capacity assessment is used to determine claimant's capacity to do as much as she is possibly able to do despite her limitations. *See* 20 C.F.R. § 404.1545(a)*; see also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."). An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing

level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). An RFC is not based on any one piece of evidence, but rather on all of the evidence of record—including a claimant's hearing testimony, her other statements, the examination findings, the medical source opinions, and anything else that tends to bear on the claimant's allegations of disabling symptoms. *Id.*; *Moore v. Barnhart*, 405 F.3d 1208, 1212–13 (11th Cir. 2005); *Lewis*, 125 F.3d at 1440.

At the hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988) (ALJ not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The ALJ's finding must be supported by substantial evidence in the record as a whole. *Winschel v. Comm. of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

McMeans argues the ALJ erroneously relied on the opinion of Dr. Leonard, the non-examining state agency mental health expert, because Dr. Leonard did not treat McMeans and Dr. Leonard incorrectly stated McMeans was being prescribed Lexapro but not an

antipsychotic.   Tr. 243, 253, 272; Pl.'s Reply Br. (Doc. 18) at 8.   Any error in stating

Plaintiff's prescriptions was harmless.   As of July 1, 2011, Dr. Shah's treatment records do

not show a refill prescription for Latuda.   Tr. 233, 259.   In addition, where the ALJ has

properly discounted the opinion of an examining source, the ALJ may rely on the contrary

opinions of non-examining sources.   *See Milner v. Barnhart*, 275 F. App'x 947, 948 (11th

Cir. 2008) (where ALJ properly rejected conflicting opinion of one-time examining

physician, ALJ did not err by giving substantial weight to the opinions of non-examining

psychologists); *Wainwright v. Commissioner of Social Security Administration*, 2007 WL

708971, at *2 (11th Cir. 2007) (where ALJ properly rejected examining psychologist's

opinion, the ALJ was entitled to rely on the opinions of non-examining state agency

psychologists).

The record includes the medical records of Dr. Shah and Plaintiff's other doctors,

including Dr. Shekar, Plaintiff's primary care physician, and the evaluation by Dr. Leonard,

the state agency psychologist.   After reviewing the evidence of record, Dr. Leonard

completed a Psychiatric Review Technique form and a Mental Health Residual Capacity

Assessment.   Tr. 260-72, 274-76.   Dr. Leonard gave the opinion that Plaintiff had less than

marked limitations in activities of daily living; maintaining social functioning; maintaining

concentration, persistence, or pace; and no episodes of decompensation of extended duration.

Tr. 270.   He set out the reasons for his opinions in his accompanying notes.   Tr. 272.   Dr.

Leonard also determined Plaintiff can understand, remember, and complete simple tasks, and

that she can maintain attention sufficiently to complete simple tasks but was moderately limited in carrying out detailed instructions.  He gave the opinion that Plaintiff appears able to complete an eight-hour workday but "would function best with a flexible daily schedule in a well-spaced work setting," with casual, non-intense interaction with others.  Tr. 274-76. For the reasons previously explained, the ALJ's decision to rely on the opinion of Dr. Leonard and not that of Dr. Shah is supported by substantial evidence.  *See Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x  848, 851 (11th Cir. 2006) (the ALJ could give great weight to state agency physicians where the expert opinions of the state agency physicians were supported by and consistent with the record as a whole).

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  Here, the ALJ evaluated all the evidence before him which led him to conclude that Plaintiff for the relevant time period Plaintiff was not disabled as a result of her mental impairment, singly or in combination with her other impairments, was able to perform less than the full range of light work with limitations, and that she could return to her former job as a shuttle driver.  It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual functional capacity assessment is consistent with the medical evidence as a whole. After a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Plaintiff's residual functional capacity to perform less than the full range of work, with specified limitations.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

DONE this 29th day of December, 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE